COURT OF APPEALS
DECISION
DATED AND FILED

April 14, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.    **2020AP454**
**2020AP455**
**2020AP456**
**2020AP457**
**2020AP458**

Cir. Ct. Nos.  **2015CF626**
**2015CF680**
**2015CF681**
**2015CF730**
**2016CF80**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TYLER M. METZNER,

DEFENDANT-APPELLANT.

APPEALS from an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. In this consolidated appeal, Tyler M. Metzner appeals from an order of the circuit court granting in part and denying in part his postconviction motion for plea withdrawal. Metzner sought to withdraw his guilty pleas and reinstate his pleas of not guilty by reason of mental disease or defect (NGI) on the basis of ineffective assistance of counsel. Metzner also argues that he was improperly convicted and sentenced on felony bail jumping charges, that the record fails to establish a factual basis for a charge of felony escape, and that he was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights. We reject Metzner's arguments and affirm.

### Background

¶2     Between May 28, 2015, and February 2, 2016, Metzner amassed fifty-three misdemeanor and felony charges in eleven criminal cases. At issue in this appeal are circuit court case Nos. 2015CF626, 2015CF680, 2015CF681, 2015CF730, and 2016CF80.[1]   All involved charges for conduct that occurred while Metzner was in custody at the Sheboygan County Detention Center (SCDC).

---

[1]  We ordered the appeals in these cases consolidated on March 12, 2020.

¶3     In these cases,[2] Metzner was charged twice for "break[ing] a fire suppressant sprinkler head off of the ceiling," which, under at least one circumstance, caused "a large volume of water to enter the cell at a rapid rate."[3] He also spit and threw feces at correctional officers and healthcare professionals, stuffed his blanket in the toilet, punched the security camera in his cell, and smeared his feces on the cell window and walls on multiple occasions. In a particularly egregious incident, Metzner attacked a correctional sergeant, striking him in the head repeatedly.

¶4     According to the complaints, Metzner reported that he did these things "because he was bored," was "having significant issues with some of the guards in the facility," and was upset about the conditions in his cell. "He stated that it was either damage the sprinkler heads or, in his words, receive a homicide charge." Metzner reported that "all of these things, coupled with being placed in complete seclusion, [was] driving his anger level through the roof," and when

---

[2] In case No. 2015CF626, the criminal complaint charged ten counts, including interference with fire fighting, pursuant to WIS. STAT. § 941.12 (2019-20); two counts of felony bail jumping; criminal damage to property; and six counts of misdemeanor bail jumping. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted. In case No. 2015CF680, the complaint charged six counts, again for interference with fire fighting, criminal damage to property, felony bail jumping, and three counts of misdemeanor bail jumping. In case No. 2015CF681, the State charged battery by prisoner, pursuant to WIS. STAT. § 940.20(1); escape, pursuant to WIS. STAT. § 946.42(3)(a); assault by prisoner, pursuant to WIS. STAT. § 946.43(1m)(a); and resisting an officer causing a soft tissue injury, pursuant to WIS. STAT. § 946.41(1), (2r). In case No. 2015CF730, the charges were three counts of assault by prisoner, three counts of misdemeanor bail jumping, and two counts of felony bail jumping. And finally, in case No. 2016CF80, the State charged two counts of assault by prisoner and four counts of felony bail jumping.

[3] Metzner "had either successfully removed or attempted to remove the sprinkler head" at least five times.

3

warned that if he continued to behave in this way he would receive additional charges, he "said that until he receives the things he wants at the detention center, he will rip off every sprinkler head."

¶5    Metzner was in court on November 4, 2015, for a preliminary hearing, which he waived, in case Nos. 2015CF618 and 2015CF626. During that hearing, he informed the court that he was on medication for "[d]epression, schizophrenia, and anxiety disorder," and that the "treatment" "[k]ind of" "interfere[s] with [his] ability to understand what's going on here." When the court investigated, Metzner responded, "I can understand what's going on." At that point, trial counsel stated that Metzner intended to enter an NGI plea and that there was "a question of competency based on a review of the [c]omplaints." Trial counsel reported that it was her "goal to have [Metzner] transferred to an inpatient [mental health] facility and be evaluated as soon as possible." The court entered the competency evaluation order the next day.

¶6    On December 2, 2015, Metzner was again in court for the preliminary hearings in case Nos. 2015CF680 and 2015CF681. Again, Metzner entered NGI pleas, and trial counsel expressed that "[t]hese cases are frustrating" and "heartbreaking because Mr. Metzner is in serious need of mental health assistance."[4] Trial counsel explained,

---

[4] It is important to note that during Metzner's time at SCDC, he was receiving prescribed medications for treatment of his mental health, and he reported that he "talk[s] to the health person at the jail, like, every week."

4

> I think the cases now where he has allegedly hurt an officer, you know, he's consistently on suicide watch. He is a danger to himself. He is a danger to others. I don't know why he can't be transferred to Mendota [mental health facility]. I'm told it can't be until all these cases are resolved. I feel we are on a vicious cycle we can't seem to break.
>
> So I don't know really what else to do, and I feel like until we get these cases resolved we're going to keep coming back here. And I'm concerned for Mr. Metzner's health, and I'm concerned for the safety of the Detention Center as well. I would like to see him transferred to Mendota or Winnebago [mental health facility] so he could receive help.

The court, the State, and counsel then discussed the situation, with the court indicating that "I'm not aware of any authority I have to simply transfer [Metzner to a mental health facility] at this point without a mental commitment order or some type of disposition in these cases." The hearing concluded with the State and the court providing suggestions to assist counsel in obtaining a transfer for Metzner.

¶7      On December 11, 2015,[5] Dr. Mary Kay Luzi, Ph.D., completed her competency evaluation of Metzner, after which the circuit court found Metzner competent based on Luzi's report and trial counsel's stipulation to waive the competency hearing. Counsel then pursued plea negotiations with the goal of achieving a global resolution of the charges.

---

[5] That same day, Metzner picked up the charges in case No. 2015CF730. Metzner waived his preliminary hearing on these charges at his global plea hearing.

5

¶8    Metzner ultimately resolved the cases with a global plea agreement.[6] The court ordered a presentence investigation report (PSI) and held the sentencing hearing on March 21, 2016. The circuit court sentenced Metzner to a total of seventeen years' initial confinement and seventeen years' extended supervision.

¶9    In October 2018, Metzner filed a postconviction motion seeking to withdraw his guilty pleas. The circuit court held an evidentiary hearing on the motion. Trial counsel and Dr. Steven Kaplan, Ph.D., testified. The court denied

---

[6] Metzner pled to three counts of expelling bodily fluids and one count of felony bail jumping in case No. 2015CF730; one count of battery by prisoner, one count of escape, one count of assault by prisoner causing fear of death, and one count of resisting an officer causing soft tissue injury in case No. 2015CF681; one count of interfering with fire equipment, one count of criminal damage to property, and one count of felony bail jumping in case No. 2015CF680; and one count of interfering with fire equipment, one count of felony bail jumping, and one count of criminal damage to property in case No. 2015CF626. The remaining counts in those cases were dismissed and read in for sentencing. Case Nos. 2015CF618, 2015CM815, 2015CM768, 2015CM557, and 2015CM499 were also dismissed in their entirety and read in.

After his plea hearing, but before sentencing, Metzner picked up case No. 2016CF80 on February 2, 2016. Upon further negotiations, Metzner pled to two counts of expelling bodily fluids at a corrections officer and one count of felony bail jumping. The remaining charges, as well as case No. 2016CM71, were dismissed and read in.

6

Metzner's motion for plea withdrawal, finding that Metzner had not met his burden.[7] Metzner appeals.

*NGI*

¶10     We begin with Metzner's argument that he "should be allowed to withdraw his guilty pleas and reinstate his NGI pleas due to prejudicial and ineffective assistance of counsel in addressing and handling his serious mental health issues." After sentencing, a defendant is entitled to withdraw a plea only if he or she establishes by clear and convincing evidence that withdrawal is necessary to correct a "manifest injustice." *State v. Taylor*, 2013 WI 34, ¶¶24, 48, 347 Wis. 2d 30, 829 N.W.2d 482; *State v. Thomas*, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836 ("If a defendant moves to withdraw the plea after sentencing, the defendant 'carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a manifest injustice.'" (citation omitted)). In other words, "there are 'serious questions affecting the fundamental integrity of the plea.'"

---

[7] Metzner's motion also alleged that the record failed to establish an adequate basis for the charges of interfering with fire fighting. Metzner noted that he pled to WIS. STAT. § 941.12(1), which provides that "[w]hoever intentionally interferes with the proper functioning of a fire alarm system or the lawful efforts of fire fighters to extinguish a fire is guilty of a Class I felony." Metzner claimed that he did not interfere with the "proper functioning of a fire *alarm system*" as "[t]here [we]re no allegations that any 'alarm' sounded or that any fire fighter was otherwise alerted." The State conceded that judgment on those charges was entered in error and that Metzner should have been charged under § 941.12(2), which provides that "[w]hoever interferes with, tampers with or removes, without authorization, any fire extinguisher, fire hose or any other fire fighting equipment, is guilty of a Class A misdemeanor." The court granted Metzner's motion as to that issue and ordered the convictions on those counts vacated and the charges dismissed.

*State v. Dillard*, 2014 WI 123, ¶36, 358 Wis. 2d 543, 859 N.W.2d 44 (citation omitted). "One way to demonstrate manifest injustice is to establish that the defendant received ineffective assistance of counsel." *Id.*, ¶84.

¶11 To establish ineffective assistance of counsel, the defendant must show both that trial counsel's performance was deficient and that the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To find deficient performance, the defendant must establish that "counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). Our review of counsel's performance is "highly deferential," and "[c]ounsel enjoys a 'strong presumption' that his [or her] conduct 'falls within the wide range of reasonable professional assistance.'" *Id.* (citation omitted).

¶12 To establish prejudice, "the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.*, ¶37 (citation omitted). Where the defendant seeks post-sentencing plea withdrawal, he or she "must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *State v. Cooper*, 2019 WI 73, ¶29, 387 Wis. 2d 439, 929 N.W.2d 192 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). We need not reach both prongs of the *Strickland* test if one is dispositive. *Strickland*, 466 U.S. at 697. Whether the defendant received ineffective assistance of counsel is a question of constitutional fact: we uphold the circuit court's findings of fact unless they are clearly

8

erroneous, but we independently determine whether counsel provided constitutionally ineffective assistance. *Dillard*, 358 Wis. 2d 543, ¶86.

¶13    On appeal, Metzner faults trial counsel for allowing him to be "held in isolation for months" at SCDC where he "received no meaningful mental health treatment," which led to the charges in these cases. Citing to *Jones 'El v. Berge*, 164 F. Supp. 2d 1096, 1098, 1102-1103 (W.D. Wis. 2001), Metzner argues that "[c]onditions of confinement in county jails are notoriously more difficult than in state prisons, especially for inmates with mental health problems," as "isolation" and "[t]he resultant sense of doom can render inmates incapable of following the rules." According to Metzner, trial counsel "did not believe [he] was truly mentally ill," based on the competency report from Luzi indicating a history of "malingering," and, as a result, "everyone" "turned[ed] a blind eye to how the isolation and absence of treatment at SCDC impacted him."

¶14    Metzner also faults trial counsel for "abandoning his NGI defense." He explains, "It was deficient to unilaterally abandon Metzner's *NGI* defense based on a *competency* report and an erroneous reading of his Winnebago records, particularly without: (1) getting an NGI evaluation; or (2) consulting any mental health professional; or (3) at least picking up the phone to call Dr. Kaplan [who] had evaluated Metzner in 2010 and found he had a valid NGI defense."

¶15    We conclude that Metzner has failed to prove that trial counsel performed deficiently. First, the record on appeal is clear that trial counsel took steps to facilitate Metzner's removal from SCDC and transfer to a mental health facility. Counsel testified that she recognized early on that Metzner was having

9

difficulties. At the November 4, 2015 hearing, counsel indicated that she intended to get Metzner transferred out of SCDC, and she again raised the issue at the hearing on December 2, 2015. Although her efforts were ultimately unsuccessful, she testified that she attempted to assist Metzner by filing a motion to reduce his bail to a signature bond so he could be released to a mental health facility; calling mental health facilities to see if they would take him, which they refused to do without a court order; calling the Department of Health Services and speaking with corporation counsel to have an evaluator meet with him; calling SCDC, which "would not get involved because [it] said that [it] had mental health treatment there, and he was getting it, and it was a locked inpatient facility," and asking the circuit court for an order releasing Metzner to a mental health facility. Trial counsel also arranged for a physician, who "had helped [Metzner] a lot through church and in the community," to have "visitation with [Metzner]." Counsel indicated that "at the time the Court, the district attorney, and I were all under the impression that he would be transferred to Mendota" as a result of the competency evaluation, and she found out in early December 2015 that would not be the case. Based on this record, trial counsel was not constitutionally deficient in her efforts.

¶16 As to trial counsel's decision not to pursue an NGI plea and to work toward a global resolution of Metzner's charges, we conclude that was a reasonable strategic decision based on an appropriate investigation under the circumstances. Counsel began her representation of Metzner from a posture of an NGI plea until the point at which she reviewed Luzi's competency evaluation. Luzi's evaluation did not only find that Metzner was competent to proceed, but her

review of collateral records also indicated that he had a history of "[m]alingering (i.e., feigning/exaggerating psychiatric symptomatology for secondary gain purposes)." She reported that in 2003 Metzner was found not competent, but "during subsequent competency restoration at [the mental health facility], he was assessed as malingering along with diagnoses of unspecified depressive disorder, antisocial personality and substance dependence." Then, in 2010, Metzner was adjudicated NGI[8]—for charges similar to those at issue in these cases—but when he was sent to the mental health facility, "he was assessed to show no evidence of serious mental illness, either major mood or thought disorder, despite being on no psychotropic medication." Luzi noted that Metzner's mental health contacts were "widely spaced and occurring in the context of legal problems with local police." Specifically, she found a "lack of support for a serious mental illness—either major mood disorder, thought disorder or psychotic symptomatology."

¶17 After trial counsel's investigation, including a review of "all of [Metzner's] records and then the competency evaluation," she at that point determined that an NGI plea was "not viable." She testified,

> I know competency and NGI are very different situations. And if the competency report would have come back and given me something to go on, but it was so damaging. And then the review of the records were so damaging that to pursue that to keep [Metzner] at the Detention Center any longer, you know, what I was hearing was the only way to get him help was to have him plead and get the help he needed. I didn't see how an NGI was going to help him other than dragging it out and potentially having him face more jail time.

---

[8] Our understanding from the record is that Metzner was adjudicated NGI based on an evaluation by Kaplan. Kaplan's findings were disputed by Luzi in her evaluation.

¶18    After the plea hearing, trial counsel also sought an expert opinion from Dr. Melissa Westendorf, J.D., Ph.D., as a "Hail Mary." After a one and one-half hour interview with Metzner and a review of his records, Westendorf reported that "it does not appear as though I can support his special plea of not guilty by reason of mental disease or defect." Westendorf did not "want to write an evaluation that would be submitted to the Court that would be damaging to [Metzner]," so she instead wrote a short letter. In it, she opined that "[w]hile [Metzner] certainly experiences some drastic and significant emotional dysregulation," this was "insufficient to negate his responsibility for his alleged offenses," as "his acting out [wa]s more likely the result of his antisocial characteristics."

¶19    At the postconviction motion hearing, Metzner called Kaplan to testify. Kaplan interviewed Metzner in October 2018 at the request of postconviction counsel, but he had also evaluated him previously for an NGI plea. Although we will not recount the details of Kaplan's testimony, he opined that his diagnosis of Metzner with borderline personality and bipolar disorder with psychosis was consistent with an NGI defense and that Metzner was not malingering in 2015. Kaplan explained that he did not consider Luzi's report in his opinion as it was a competency evaluation and not an NGI evaluation, nor did he consider Westendorf's letter as there was "not a lot of meat" to it. On cross-examination, Kaplan admitted that he did not test Metzner for possible malingering in his evaluations, and he agreed that "just because someone has had a mental health diagnosis" does not mean that he or she is "necessarily NGI."

12

¶20     The circuit court made extensive findings of fact before concluding that Metzner failed to establish that trial counsel's performance was deficient and prejudicial; we agree with the court's conclusion.

¶21     The question before this court is whether Metzner was denied the effective assistance of counsel, and we conclude that he was not.[9]  Trial counsel's decision to pursue a global resolution instead of presenting an NGI defense was clearly strategic, as indicated by her testimony, based on her view of the strength of Metzner's NGI defense and her goal to resolve these cases quickly so as to transfer Metzner out of SCDC.  This strategic decision was made after an investigation of Metzner's competency evaluation as well as his mental health history and was supported by Westendorf's independent assessment, sought by counsel.  *See **Strickland***, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

¶22     Trial counsel was under no legal requirement to contact Kaplan specifically, nor was she required to continue seeking an opinion from multiple experts until she found one that would support Metzner's NGI plea.  Even if one could argue that counsel's investigation was not sufficiently "thorough," two experts opined that Metzner's mental health situation could not support an NGI plea, and it was reasonable for her to rely on those opinions under the circumstances.  *See **State v. Balliette***, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805

---

[9] As Metzner recognizes, this case does not turn on whether Metzner was truly NGI or was malingering.  We take no position on that question as it is not before this court.

N.W.2d 334 ("Even decisions made with less than a thorough investigation may be sustained if reasonable, given the strong presumption of effective assistance and deference to strategic decisions."). Accordingly, we conclude that trial counsel did not perform deficiently, and, as a result, did not provide ineffective assistance. *See* **Strickland**, 466 U.S. at 697 (noting that we need not address both prongs of the analysis if the defendant does not make a sufficient showing on one of them). As Metzner did not receive ineffective assistance of counsel, there was no manifest injustice and he is not entitled to plea withdrawal.[10]

---

[10] On appeal, Metzner suggests that his postconviction motion was both a **Nelson v. State**, 54 Wis. 2d 489, 195 N.W.2d 629 (1972)/**State v. Bentley**, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), motion and a **State v. Bangert**, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), motion, which are applicable in different factual circumstances. "A defendant invokes **Bangert** when the plea colloquy is defective; a defendant invokes **Nelson**/**Bentley** when the defendant alleges that some factor extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm." **State v. Howell**, 2007 WI 75, ¶74, 301 Wis. 2d 350, 734 N.W.2d 48. Metzner notes in his brief-in-chief that

> [t]he real question, however, left unaddressed, was whether Metzner's abandonment of [the NGI] defense, along with his right to have a jury decide it, was truly voluntary and intelligent. On this front it is notable, even if not dispositive, that the plea colloquy never covered the import of withdrawing an NGI plea. **State v. Burton**, 2013 WI 61, ¶¶83-84, 349 Wis. 2d 1, 832 N.W.2d 611 (strongly recommending that plea colloquies expressly address withdrawals of NGI pleas).

Aside from this paragraph, Metzner does not develop this argument, *see* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992), and his focus on appeal as it relates to the NGI plea was clearly on his ineffective assistance of counsel claim.

(continued)

*Felony Bail Jumping*

¶23    Metzner also argues that he was improperly convicted and sentenced on felony bail jumping charges.  On appeal, Metzner advances two different arguments on this issue:  ineffective assistance of counsel and an inadequate factual basis for the bail jumping convictions.  We address both arguments below.

¶24    First, Metzner claims that his counsel's failure to recognize that he was improperly charged with a felony was deficient performance that prejudiced him "because it ended with him being wrongfully charged and convicted of *felony* bail jumping."  As noted in footnote seven, Metzner pled to two counts of felony interfering with fire fighting under WIS. STAT. § 941.12(1), which requires that a person "intentionally interfere[] with the proper functioning of a fire alarm system."  The State agreed that Metzner should have been charged under § 941.12(2)—a misdemeanor.  The circuit court ordered that the convictions on those counts be vacated and the charges dismissed.  While acknowledging that

---

We do note that the circuit court engaged Metzner in a proper plea colloquy.  The court confirmed that Metzner had gone over the plea questionnaire and waiver of rights form with his attorney, that he understood it, that he understood the constitutional rights he was giving up, that he went over the elements of the crime for each of the cases he was pleading to with his attorney and he understood those elements, and that no one threatened him.  Metzner was, in his words, "emotionally distressed" at the plea hearing, but he stated, "I understand I need to own up to the mistakes I've made, and I'm sorry."  In response, the court paused the hearing twice to give Metzner time to speak with his attorney off the record, even leaving the courtroom at one point so Metzner could talk to counsel in private.  Metzner then confirmed that he did not need more time to talk to his attorney, that he was prepared to proceed, and that he was satisfied with counsel's representation.  The court determined that the criminal complaints supported Metzner's pleas and noted that "although [Metzner was] distressed by these proceedings, understandably, [he did] understand them" and that Metzner was "found to be competent."  The court concluded that Metzner entered his pleas "freely, voluntarily, and intelligently."

those convictions were vacated, Metzner argues that "counsel's failure to recognize he was wrongfully charged with felonies" constituted deficient performance and the prejudice was "not fully rectif[ied]" by vacating those convictions.

¶25    We conclude that Metzner has failed to prove prejudice.  *See Strickland*, 466 U.S. at 697 (noting that we need not address both prongs of the analysis if the defendant does not make a sufficient showing on one of them).  The focus of Metzner's argument is that "had defense counsel done her job, the felony charges under [WIS. STAT. §] 941.12 could never have survived a preliminary hearing, and Metzner could never have been released on felony bail" and he could not later have been charged with *felony* bail jumping.  To prevail on an ineffective assistance of counsel claim sufficient to establish that plea withdrawal is necessary to correct a manifest injustice, Metzner must prove that:  (1) he was denied the effective assistance of counsel; (2) counsel's error "*caused* him to plead guilty"[11]; and (3) at the time of the plea, he was unaware of a potential challenge to the plea due to counsel's deficient performance.  *See State v. Harris*, 2004 WI 64, ¶11, 272 Wis. 2d 80, 680 N.W.2d 737 (emphasis added); *see also State v. Cooper*, 2019 WI 73, ¶29, 387 Wis. 2d 439, 929 N.W.2d 192 ("[T]he prejudice component specifically requires that 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (citation omitted)).

---

[11] "We interpret the 'cause' element of the test … to mean that a defendant must demonstrate that he would not have pled guilty *but for* the constitutional violation."  **State v. Harris**, 2004 WI 64, ¶11 n.7, 272 Wis. 2d 80, 680 N.W.2d 737 (emphasis added).

16

¶26    Metzner has not alleged or proven that counsel's purported deficient performance caused him to plead guilty. In other words, *but for* counsel's error, he would have rejected the global plea offer and gone to trial had the interfering with fire fighting charges been reduced to misdemeanors and, as a result, the bail jumping counts been charged as misdemeanors rather than felonies. Metzner's only response is that he "has proven, and the State does not dispute, that but for counsel's deficient performance, the bail jumping convictions would have been misdemeanors, not felonies." But that fact does not prove that he would not have pled guilty and, thus, does not establish prejudice under the law. Metzner understood his situation and why he was entering his pleas; as he explained at the plea hearing, "[b]asically my understanding is it would be pointless to go to jury trial 'cuz I know what I've done, like. I'm not going to sit here like an idiot, and I'm not going to play the Court for a fool." Metzner does not dispute that he would still have faced charges for multiple misdemeanors in addition to the other felony charges, and he has not claimed that he would have gone to trial on all those charges but for counsel's error.

¶27    In the alternative, Metzner argues that if we fail to find ineffective assistance of counsel, "there were inadequate factual bases for the bail jumping convictions" as he was never released from custody on bond. A guilty plea must be supported by a factual basis, and failure to establish a factual basis for a crime to which the defendant has pled constitutes a manifest injustice warranting plea withdrawal. *See **Thomas***, 232 Wis. 2d 714, ¶17. Therefore, before accepting the plea, the court must confirm that the facts supporting the charge actually constitute the offense to which the defendant is about to plead. WIS. STAT. § 971.08(1)(b);

17

*State v. Bangert*, 131 Wis. 2d 246, 262, 389 N.W.2d 12 (1986). "[A] factual basis for a plea exists if an inculpatory inference can be drawn from the complaint or facts admitted to by the defendant even though it may conflict with an exculpatory inference elsewhere in the record and the defendant later maintains that the exculpatory inference is the correct one." *State v. Black*, 2001 WI 31, ¶16, 242 Wis. 2d 126, 624 N.W.2d 363. "[I]n the context of a negotiated guilty plea, … a court 'need not go to the same length to determine whether the facts would sustain the charge as it would where there is no negotiated plea.'" *State v. Smith*, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996) (citation omitted). "The determination of the existence of a sufficient factual basis lies within the discretion of the trial court and will not be overturned unless it is clearly erroneous." *Id.*

¶28    Under *State v. Hansford*, 219 Wis. 2d 226, 244, 580 N.W.2d 171 (1998), three elements must be met for a bail jumping conviction:  "(1) the individual must have been arrested for, or charged with, a felony or misdemeanor; (2) the individual must be released from custody on bond; and (3) the individual must have intentionally failed to comply with the terms of his or her bond." *See also* WIS JI—CRIMINAL 1795.  Metzner argues that he was "never released from custody on a felony charge."

¶29    At both plea hearings, the circuit court found that the criminal complaints provided a factual basis for Metzner's pleas.  While Metzner does not specify which bail jumping convictions he identifies as unsupported by sufficient evidence, we note that all the complaints alleged that Metzner was given signature bonds in case Nos. 2015CF618, 2015CF680, and/or 2015CF730 "with the standard conditions, one of which was not to engage in criminal activity while out

on bond." Metzner does not point to any evidence in the record establishing that this was not the case. Pursuant to those signature bonds, Metzner was effectively released from custody, and by signing the signature bonds "he therefore committed himself to its conditions." *See State v. Dewitt*, 2008 WI App 134, ¶¶14, 17, 313 Wis. 2d 794, 758 N.W.2d 201 ("'[R]elease' refers to the defendant posting the bond, be it signature or cash, and need not be accompanied by the defendant's physical departure from the jailhouse."). The circuit court's finding that the complaints provided a factual basis for the plea was not clearly erroneous.[12]

---

[12] Metzner's arguments are outlined in his briefs into an ineffective assistance of counsel claim and an insufficient factual basis claim based on his release from custody on bond, pursuant to the second element of bail jumping under *State v. Hansford*, 219 Wis. 2d 226, 244, 580 N.W.2d 171 (1998). To the extent Metzner means to argue that because the felony convictions for interference with fire fighting were vacated on postconviction review, he could not have been charged with felony bail jumping, Metzner has failed to develop this argument and does not cite any authority to support his claim. *See Pettit*, 171 Wis. 2d at 646-47. The State was only required to establish that Metzner was arrested for or charged with a felony. *See Hansford*, 219 Wis. 2d at 244; *see also State v. Merryfield*, 229 Wis. 2d 52, 60-64, 598 N.W.2d 251 (Ct. App. 1999) (explaining that the purpose of requiring a factual basis "is *not* to resolve factual disputes about what did or did not happen at or before the time of the alleged offense—that is the function of a trial, which a defendant who pleads other than not guilty expressly waives"). Metzner also does not challenge the validity of the charges for the new crimes which gave rise to the bail jumping charges. *See Hansford*, 219 Wis. 2d at 245.

Likewise, Metzner makes an undeveloped argument that he had already entered pleas in case Nos. 2015CF680 and 2015CF730 when he picked up the bail jumping charge in case No. 2016CF80, so "[t]o the extent that the fiction of 'Metzner out on bail' is deemed to have survived that plea hearing, such would constitute [ineffective assistance of counsel], since it was abundantly clear by that time that Metzner was extremely vulnerable to bail jumping charges." Metzner's argument on this issue is conclusory and is unsupported by legal authority, and we address it no further. *See Pettit*, 171 Wis. 2d at 646-47.

*Felony Escape*

¶30     Metzner next argues that the record fails to establish an adequate factual basis for a completed felony escape, and, thus, Metzner should be allowed to withdraw his plea to that charge.  We disagree.

¶31     Metzner pled guilty to escape pursuant to WIS. STAT. § 946.42(3)(a).  That statute provides that "[a] person in custody who *intentionally escapes* from custody under any of the following circumstances is guilty of a Class H felony: (a) Pursuant to a legal arrest for, lawfully charged with or convicted of or sentenced for a crime."  Sec. 946.42(3)(a) (emphasis added).  Metzner does not dispute that he was legally arrested for this crime, but he argues that the question is whether he "intentionally escape[d]."

¶32     The escape occurred when Metzner was "allowed to exit" the "isolation cell" to take a shower under the supervision of the correctional sergeant.  Metzner assaulted the sergeant and then left the hallway where the showers were located via a door and entered a second hallway.  According to Metzner, he "did not go through any locked door and thus never left a secure area.  He went from one hallway to another, and this was not an adequate factual basis for the charge of 'Escape.'"  At most, Metzner argues, it was an unsuccessful attempted escape.  Metzner cites to *State v. Sugden*, 143 Wis. 2d 728, 422 N.W.2d 624 (1988), comparing Sugden's escape to the circumstances of his own.

¶33     In *Sugden*, the question before the court was whether "Sugden escape[d] the custody of the institution" when he did not leave the confines of the outer walls.  *Id.* at 730.  There, the defendant and other inmates overpowered

guards in the locked Wisconsin Cottage at the Kettle Moraine Correctional Institution, forced the guard to unlock the exterior door, stole a station wagon, and used the vehicle to "smash[] through" the main gate of the institution "but was up-ended in the area between the inner gate and the outer perimeter of the sally port." *Id.* at 731-32. The court concluded that

> "custody" per se of an institution is not directly related to its geographical outer boundaries. There may be custody without the walls and custody of various kinds, without limitation, within the walls. Hence, from the face of the statute as juxtaposed against the facts here, it is apparent that the locked cottage where Sugden was held constituted "custody of the institution." When he intentionally left that custody without lawful authority, his crime of escape was complete.

*Id.* at 737.

¶34 Metzner suggests that his situation and that of Sugden are different only because Sugden went out a locked door, but we see nothing in the court's decision indicating that is a requirement. In fact, the court explained that "[i]t is equally clear from the examples in the statute that custody of an institution may exist within the perimeters of an institution because of special treatment that is given to particular inmates." *Id.* at 736-37. Metzner was being held in an isolation cell, and he was only allowed outside the locked isolation cell in the presence of the correctional sergeant to use the shower. When he assaulted the sergeant and left the shower and isolation area via a doorway into another hallway without permission, an appropriate inference is that he left the "custody of the institution" based on his "special treatment" in isolation. *See id.* at 737; *see also Black*, 242 Wis. 2d 126, ¶16 ("[A] factual basis for a plea exists if an inculpatory inference can be drawn from the complaint or facts admitted to by the defendant

even though it may conflict with an exculpatory inference elsewhere in the record and the defendant later maintains that the exculpatory inference is the correct one. This is the essence of what a defendant waives when he or she enters a guilty or no contest plea." (citation omitted)). Thus, the complaint in this case establishes a sufficient factual basis for Metzner's guilty plea to the escape charge.

*Eighth Amendment*

¶35 Finally, Metzner argues that his Eighth Amendment rights were violated. He explains that "a prison sentence of seventeen years, given the devastating effects of segregation/isolation on mentally ill inmates, is cruel and unusual under the facts of this case." Metzner claims "he was held to account for what could have been avoided"—had he been moved to a "secure psychiatric facility where he could access appropriate diagnosis and treatment"—"by having 17 years of his life taken from him." It is this entire set of circumstances that Metzner posits was cruel and unusual. In essence, then, Metzner is not arguing that his sentence alone was cruel and unusual, as he admits that his sentence was not disproportionate to the crimes he committed; instead, he claims that his sentence was cruel and unusual only due to the circumstances of his pretrial detention.

¶36 We conclude that Metzner has failed to establish a violation of his Eighth Amendment rights. We note that, based on our reading of Metzner's arguments, he does not argue that his Eighth Amendment rights were violated by his pretrial detention, as pretrial detention does not implicate the Eighth

22

Amendment and would instead be considered under the Fourteenth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979).

¶37 In support of his position, Metzner cites to *Berge*, 164 F. Supp. 2d at 1117, and *Gillis v. Litscher*, 468 F.3d 488, 490-91 (7th Cir. 2006), noting that "there are uncanny similarities [between] the conditions of confinement Metzner experienced" and those of the inmate in *Gillis*. *Gillis* and *Berge*, however, are 42 U.S.C. § 1983 cases—civil actions, and the plaintiffs challenging their conditions of confinement were inmates at the Wisconsin Secure Program Facility in Boscobel, the highest-security prison—not pretrial detainees. *See Gillis*, 468 F.3d at 489; *Berge*, 164 F. Supp. 2d at 1098. Despite these case citations, Metzner clarifies that his claim is not against SCDC for cruel or unusual punishment. Instead, Metzner's argument is that his "*prison sentence of seventeen years … is cruel and unusual under the facts of this case.*" (Emphasis added.)

¶38 The Eighth Amendment to the United States Constitution[13] provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

> "[W]hat constitutes adequate punishment is ordinarily left to the discretion of the trial judge. If the sentence is within the statutory limit, appellate courts will not interfere unless clearly cruel and unusual." A sentence is clearly cruel and unusual only if the sentence is "so 'excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of

---

[13] The protections of the Eighth Amendment are made applicable to the states through the Fourteenth Amendment. *State v. Ninham*, 2011 WI 33, ¶45, 333 Wis. 2d 335, 797 N.W.2d 451.

> reasonable people concerning what is right and proper under the circumstances.'"

*State v. Ninham*, 2011 WI 33, ¶85, 333 Wis. 2d 335, 797 N.W.2d 451 (alteration in original; citations omitted). "A sentence well within the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Berggren*, 2009 WI App 82, ¶47, 320 Wis. 2d 209, 769 N.W.2d 110 (citation omitted). We independently review whether Metzner's sentence is cruel and unusual punishment. *See Ninham*, 333 Wis. 2d 335, ¶44.

¶39 Here, when we compare Metzner's sentence to the maximum that the circuit court could have imposed, we conclude that Metzner's sentence was not cruel and unusual. Metzner's sentence of seventeen years' initial confinement and seventeen years' extended supervision was well below both the aggregate maximum penalties for the charges that he pled to as well as the over 140 years he was facing prior to the plea agreement.

¶40 To the extent that Metzner means to argue that his sentence, considering his circumstances at SCDC, should "shock public sentiment and violate the judgment of reasonable people," we disagree. *See id.*, ¶85 (citation omitted). Metzner claims that "a sentence of 17 years under the facts of this case, with virtually no regard for how his mental health problems interfaced with the charges for which he was being sentenced, truly offends society's standards of decency." *See id.*, ¶46. Metzner, however, fails to cite any legal authority in support of his position, aside from these conclusory statements.

¶41　We recognize that, based on the record, Metzner clearly has some mental health concerns, and we acknowledge that the circumstances of this case, wherein he continued to collect charges while in isolation at SCDC, is symbolic of the inherent problems of mental health in the criminal justice system. But we disagree that there was "virtually no regard for how his mental health problems interfaced with the charges." At sentencing, trial counsel focused on Metzner's mental health and time in isolation. The circuit court also touched on this, but acknowledged that the proper sentencing considerations, *see **State v. Gallion***, 2004 WI 42, ¶44, 270 Wis. 2d 535, 678 N.W.2d 197, weighed in favor of "some pretty serious periods of incarceration." During the period from May 2015 to February 2016, Metzner amassed fifty-three charges and beat a correctional sergeant. He admitted to the PSI writer that he committed these offenses "because of the way he was treated" and that "he [was] not remorseful for his actions."[14] Thus, we conclude that his sentence was well within the limits of the maximum sentence and not so disproportionate to shock public sentiment and that Metzner has failed to establish an Eighth Amendment violation.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[14] Metzner did state to the PSI writer that he was "remorseful" for "assaulting" the sergeant, but the sergeant also "explained that [Metzner] has made unnecessary comments to him since the incident."