STATE of Wisconsin, Plaintiff-Respondent,

v.

Oto ORLIK, Defendant-Appellant.

Court of Appeals

*No. 98–2826–CR. Submitted on briefs April 13, 1999.—Decided April 29, 1999.*

(Also reported in 595 N.W.2d 468.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general,and *Daniel J. O'Brien*, assistant attorney general.

Before Dykman, P.J., Vergeront and Deininger, JJ.

VERGERONT, J. Oto Orlik appeals a trial court order that prohibited him from having contact with his wife and daughter, Lucia, while incarcerated after arrest for first-degree intentional homicide of his younger daughter, attempted first-degree intentional homicide of his wife and related charges. The no-contact provision was originally imposed as a condition of release pending trial. However, when Orlik was unable to post cash bail set by the court, the court decided that the no-contact provision also applied while Orlik was incarcerated. Orlik's wife and Lucia expressed in writing the desire to have contact with him while he was incarcerated. Orlik contends that under the plain language of §§ 969.01 and 969.03, STATS., the court has authority to set conditions on the release of a defendant pending trial, but does not have authority to impose conditions on a defendant who remains incarcerated awaiting trial.

We granted Orlik's petition for interlocutory review of the trial court's order. Although resolution of the issue will have no effect on Orlik because, as we understand it, a trial has already occurred,[1] we conclude the issue is one that is capable of repetition yet evading review. We therefore address the merits. We conclude the court did not have the authority under §§ 969.01 and 969.03, STATS., to impose no-contact orders on Orlik that govern him while he remains

[1] Orlik informs us in his reply brief, filed on February 11, 1999, that at the time that brief was being written he had already pleaded no contest to the charges in the guilt phase and the trial on the second phase—not guilty by reason of insanity—was already underway.

incarcerated. Although § 940.47, STATS., does authorize a court to enter such orders if the standards of that statute are met, we do not remand for a determination under that statute because Orlik is no longer incarcerated while awaiting trial. We therefore reverse.

## BACKGROUND

At Orlik's initial appearance, the court commissioner ordered a cash bond of $320,000 as a condition of release. Among other conditions of release, the court ordered Orlik not to do or cause to be done, or permit to be done on his behalf, any act proscribed by §§ 940.42 through 940.45, STATS., (intimidation of witnesses and victims). It also ordered that he "shall not have any contact direct or indirect with Danica Orlikova [his wife], Lucia Orlikova and/or Linda Orlikova."[2] Orlik remained incarcerated because he was not able to post the cash bond. His wife and daughter Lucia expressed in writing a desire to visit Orlik. Orlik sought a hearing to review the conditions of release.[3]

[2] It is not clear to this court from the parties' briefs and from the record whether Linda Orlikova is another daughter, another relative, or another name for Lucia. This factual question does not affect our decision.

[3] Orlik sought a hearing under § 969.08(1), STATS., which governs the reduction, increase or revocation of conditions of release. In view of what Orlik was actually requesting in his argument to the court—a ruling that the no-contact provision rule did not apply while Orlik was in jail and unable to post the cash bond—the designation of the motion as one to modify the conditions of release under § 969.08(1) may not be the proper designation. However, the court and the State understood the relief Orlik was seeking, and the designation of the motion does not affect our analysis on appeal.

At the hearing Orlik argued that under § 969.01(1), STATS., the court was authorized to impose conditions only for Orlik's release and not conditions that governed him while he remained incarcerated. Orlik asked the court to clarify that the no-contact provision already entered did not apply while Orlik remained incarcerated. Orlik's attorney explained that Orlik's other attorney had agreed to the no-contact provision as a condition of release at the initial appearance, and he conceded that, were Orlik released at some point in the future, the no-contact provision would apply unless modified.

Orlik's counsel represented to the court that the jail's policy was that if there is a no-contact condition for a defendant's release, the persons named in that provision may not visit the defendant in jail, and there may also be difficulty with a defendant's mail to those persons. He explained that Orlik's wife and Lucia were present in court and had asked Orlik's attorney to request permission for contact with Orlik. Orlik's counsel argued that there was no showing that Orlik's wife or Lucia had been intimidated; their physical safety would not be threatened if they visited Orlik in jail; and their phone conversations and conversations in the jail could be monitored. He pointed out that § 940.47, STATS., authorized the court to enter no-contact orders against defendants who are incarcerated while awaiting trial, but contended that the showing required by that statute had not been made.

The prosecutor responded that the court may set conditions for release to protect the community and prevent intimidation of witnesses, and those conditions apply even if a defendant remains incarcerated. The prosecutor acknowledged that the information the State had was that the family members wanted contact

with Orlik. However, the prosecutor contended the no-contact provision was necessary while Orlik was incarcerated because: (1) there was a history of violence by Orlik toward his wife even before the incident giving rise to these charges; (2) the State was concerned about the mental health of Orlik's wife and daughter as well as their physical safety; (3) in the State's view "guilt is the greatest intimidator"; and (4) the allegations of the complaint supported such an order. The prosecutor also pointed out the potential difficulty in monitoring conversations, telephone calls or letters between Orlik and his family because they spoke languages other than English.

The trial court entered a written decision on September 18, 1999, denying Orlik's motion. The court interpreted §§ 969.01 and 969.03, STATS., to allow a court to impose a no-contact condition whether or not a defendant is released from custody. The court reasoned that it is absurd to interpret the statute to authorize the court to order that a defendant not intimidate a witness after release, but not to authorize the court to prevent such intimidation while the defendant remains in custody. The court concluded, based on the criminal complaint and the statements of counsel, that the no-contact provision should continue to govern Orlik while he remained incarcerated. The court acknowledged that it was undisputed that the family members wanted to have contact with Orlik, but observed there was no record regarding the family dynamics, the potential for intimidation of the alleged victims and potential witnesses, the ability of the institution to monitor contact, and "the degree of sophistication of the individuals involved and their ability to deal with the emotions which will inevitably surface." The court left open the possibility that addi-

tional information might support a deletion or modification of the no-contact provision while Orlik was incarcerated.

Orlik filed a petition for leave to appeal from the court's non-final order on October 2, 1998, repeating the arguments he made in the trial court. We granted the petition on October 27, 1998. Orlik filed a motion for summary reversal with a memorandum of law, in an effort to obtain an expedited resolution of the issue. The State opposed the motion and we denied it, concluding that the issue merited full briefing.

## DISCUSSION

*Mootness*

The State contends that we should not decide whether the trial court correctly interpreted §§ 969.01 and 969.03, STATS., because, by the time this court issues a decision, Orlik's trial will be completed and the issue will no longer affect him. While courts generally refrain from deciding issues when the decision will not have a practical effect on the parties, there is an exception to that rule for questions that are capable and likely of repetition, yet evade review because the appellate process cannot be completed within a time frame that would result in a decision having a practical effect on the parties. *State ex rel. Jones v. Gerhardstein*, 141 Wis. 2d 710, 724, 416 N.W.2d 883, 888 (1987).

This appeal presents an issue of statutory construction, with the State and Orlik vigorously debating the correct interpretation of §§ 969.01 and 969.03, STATS. Whether those statutes authorize a court to impose conditions on pretrial incarceration as well as on release pending trial is an issue that will likely occur again. In particular, whether a court's authority

to impose pretrial, no-contact provisions on incarcerated defendants is derived from Chapter 969, STATS., or from § 940.47, STATS., may arise again. When it does, the time frame of the appellate process will likely again prevent a decision before the trial. We observe that Orlik acted promptly and made reasonable efforts to obtain an appellate decision while he was still incarcerated, but, through no fault of his own, was unable to do so. We conclude we should decide the issue raised on this appeal because a resolution will provide guidance to trial courts, prosecutors and defense counsel.

*Interpretation of Chapter 969,* STATS.

The interpretation of a statute is a question of law, which we review de novo. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506, 509 (1997). The purpose of statutory interpretation is to discern the intent of the legislature, and we consider first the language of the statute. *Id.* If the statutory language clearly and unambiguously sets forth the legislative intent, we apply that to the case at hand and do not look beyond it to ascertain its meaning. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Id.* at 406, 565 N.W.2d at 510. However, a statute is not rendered ambiguous merely because the parties disagree as to its meaning. *Id.* If a statute is ambiguous, we look to the scope, history, context, subject matter and object of the statute in order to ascertain legislative intent; but resort to legislative history is not appropriate in the absence of a conclusion of ambiguity. *Id.*

In this case we must interpret the relevant sections of Chapter 969, STATS. Section 969.01, STATS., provides, in pertinent part:

**Eligibility for release.** (1) BEFORE CONVICTION. Before conviction, except as provided in ss. 969.035 and 971.14 (1), a defendant arrested for a criminal offense is eligible for release under reasonable conditions designed to assure his or her appearance in court, protect members of the community from serious bodily harm or prevent the intimidation of witnesses. Bail [defined in § 969.001, STATS., as monetary conditions of release] may be imposed at or after the initial appearance only upon a finding by the court that there is a reasonable basis to believe that bail is necessary to assure appearance in court. In determining whether any conditions of release are appropriate, the judge shall first consider the likelihood of the defendant appearing for trial if released on his or her own recognizance.

. . . .

(4) CONSIDERATIONS IN SETTING CONDITIONS OF RELEASE. If bail is imposed, it shall be only in the amount found necessary to assure the appearance of the defendant. Conditions of release, other than monetary conditions, may be imposed for the purpose of protecting members of the community from serious bodily harm or preventing intimidation of witnesses. Proper considerations in determining whether to release the defendant without bail, fixing a reasonable amount of bail or imposing other reasonable conditions of release are: the ability of the arrested person to give bail, the nature, number and gravity of the offenses and the potential penalty the defendant faces, whether the alleged acts were violent in nature, the defendant's prior record of criminal convictions and delinquency adjudications, if any, the character, health, residence and reputation of the defendant, the character and strength of the evidence which has been presented to the judge, whether the defendant is currently on probation, extended supervision or parole, whether

> the defendant is already on bail or subject to other release conditions in other pending cases, whether the defendant has been bound over for trial after a preliminary examination, whether the defendant has in the past forfeited bail or violated a condition of release or was a fugitive from justice at the time of arrest, and the policy against unnecessary detention of the defendant's pending trial.

Section 969.03, STATS., governs the release of defendants charged with felonies and provides in relevant part:

> **Release of defendants charged with felonies.** (1) A defendant charged with a felony may be released by the judge without bail or upon the execution of an unsecured appearance bond or the judge may in addition to requiring the execution of an appearance bond or in lieu thereof impose one or more of the following conditions which will assure appearance for trial:
>
> . . . .
>
> (e) Impose any other condition deemed reasonably necessary to assure appearance as required or any nonmonetary condition deemed reasonably necessary to protect members of the community from serious bodily harm or prevent intimidation of witnesses, including a condition requiring that the defendant return to custody after specified hours.

Orlik argues these sections all plainly apply to "conditions of release," not conditions of incarceration, and the conditions imposed by the court therefore do not apply if the defendant remains incarcerated. The State responds that the only reasonable reading of these sections is that conditions of release become effective at the time they are imposed and remain in

effect whether or not the defendant is ever released from custody.[4]

The State argues that the monetary condition has the single and narrow purpose of assuring the defendant's appearance at trial, but the other non-monetary conditions have the broader purpose of "protecting members of the community from serious bodily harm or preventing intimidation of witnesses," pointing to the language of §§ 969.01(4) and 969.03(1)(e), STATS. These broader purposes, the State contends, can only be served if no-contact orders apply whether or not the defendant has been released, since a defendant may threaten and intimidate, or cause that to occur, from inside the jail as well as from outside. Under the State's reading, the court's authority to impose conditions to achieve these broader purposes is entirely unrelated to the defendant's custodial status.

The flaw in the State's analysis is that it focuses only on the purposes of the conditions and ignores the language that provides the context for setting these conditions: release. It is true that a monetary condition serves a different purpose than conditions to protect the public and prevent intimidation of witnesses. It is also true that a defendant could be a threat to particular individuals and intimidate witnesses or victims whether or not incarcerated. However, neither of these points provide a reasonable interpretation for the

[4] There is some language in the State's brief that suggests that it views the statutory language as ambiguous, but is contending that its own interpretation is more reasonable than Orlik's. However, the State goes on to argue that Orlik's interpretation is "absurd" and its own interpretation is "the only logical reading." We therefore understand the State to argue that the statutory language is not ambiguous.

phrase "conditions of release," which is used consistently and repeatedly in the title to Chapter 969, STATS., ("Bail and other conditions of release"), § 969.01(1) and (4), STATS., and § 969.03, STATS. We conclude the only reasonable interpretation of this language is that the conditions the court is authorized to impose under §§ 969.01(4) and 969.03(1)(e) are conditions that govern the release of the defendant from custody. The court may impose monetary conditions the defendant must meet before release and other conditions the defendant must meet when the defendant is released, but the statute does not suggest that the court has authority to enter orders governing the defendant's conduct if he is not released because he cannot post bail.

The State also argues that § 969.08(1), STATS., supports its position because it addresses the situation in which the defendant continues to be detained because he cannot meet the conditions of release. Section 969.08(1) provides in part:

> (1) Upon petition by the state or the defendant, the court before which the action is pending may increase or reduce the amount of bail or may alter other conditions of release or the bail bond or grant bail if it has been previously revoked. Except as provided in sub. (5), a defendant for whom conditions of release are imposed and who after 72 hours from the time of initial appearance before a judge continues to be detained in custody as a result of the defendant's inability to meet the conditions of release, upon application, is entitled to have the conditions reviewed by the judge of the court before whom the action against the defendant is pending. Unless the conditions of release are amended and the defendant is thereupon released, the judge shall

set forth on the record the reasons for requiring the continuation of the conditions imposed. . . .

The first sentence of this section makes clear that this section, like those cited earlier, is directed to the "conditions of release," and provides that a court may alter these conditions once set. The second sentence, relied on by the State, addresses the particular situations in which the defendant, after seventy-two hours from the initial appearance, "continues to be detained in custody as a result of the defendant's inability to meet the conditions of release." In such a situation, the defendant, upon motion, "is entitled to have the conditions reviewed by the judge." The third sentence contemplates that the court may alter the conditions that the defendant has been unable to meet, thereby enabling the defendant to meet those conditions and be released. Nothing in § 969.08(1), STATS., suggests that, if a defendant is unable to meet a condition for release, such as a cash bond, and the court does not modify that condition with the result that the defendant continues in custody, other conditions the court imposed to govern the defendant while released apply while he is incarcerated.

The trial court and the State are understandably concerned about the trial court's ability to protect victims and potential witnesses from threats or intimidation even when a defendant remains incarcerated pending trial. However, as Orlik pointed out in the trial court and does again on appeal, § 940.47, STATS.,[5] authorizes a court with jurisdiction over a criminal

[5] Section 940.47, STATS., provides:

**Court orders.** Any court with jurisdiction over any criminal matter, upon substantial evidence, which may include hearsay or the declaration of the prosecutor, that knowing and malicious prevention or dissuasion of any person who is a victim or who is a

matter to order a defendant not to violate §§ 940.42 to 940.45, STATS., (intimidation of witnesses and victim), to maintain a geographic distance from such persons, or to have no communication with such persons except through an attorney. Such an order must be based upon "substantial evidence, which may include hearsay or the declaration of the prosecutor, that knowing and malicious prevention or dissuasion of any person who is a victim or who is a witness has occurred or is reasonably likely to occur." Section 940.47, STATS. Thus the State's argument that it is absurd to interpret Chapter 969, STATS., to deprive a court of the authority to protect witnesses and victims from incarcerated defendants pending trial is not persuasive: another statute permits just that.

We conclude that the plain language of §§ 969.01 and 969.03, STATS., does not authorize the court to impose conditions on a defendant who remains incarcerated pending trial. The State concedes that if this court interprets these statutes in this manner, we cannot affirm the trial court's order on the alternative basis of § 940.47, STATS., but would need to remand to permit the court to determine whether it should enter

witness has occurred or is reasonably likely to occur, may issue orders including but not limited to any of the following:

(1) An order that a defendant not violate ss. 940.42 to 940.45.

(2) An order that a person before the court other than a defendant, including, but not limited to, a subpoenaed witness or other person entering the courtroom of the court, not violate ss. 940.42 to 940.45.

(3) An order that any person described in sub. (1) or (2) maintain a prescribed geographic distance from any specified witness or victim.

(4) An order that any person described in sub. (1) or (2) have no communication with any specified witness or any victim, except through an attorney under such reasonable restrictions as the court may impose.

an order under § 940.47. However, the State notes, a remand would serve no purpose at this time. We agree with this analysis. We therefore simply reverse the trial court's order that the no-contact provision imposed as a condition of release applied while Orlik remained incarcerated because he was unable to post the cash bond.

*By the Court.*—Order reversed.