STATE of Wisconsin, Plaintiff-Respondent,

v.

Travis S. DEWITT, Defendant-Appellant.†

Court of Appeals

*Nos. 2007AP2869–CR, 2007AP2870–CR, 2007AP2871–CR, 2007AP2872–CR. Submitted on briefs June 18, 2008. —Decided July 29, 2008.*

2008 WI App 134

(Also reported in 758 N.W.2d 201.)

† Petition to review filed.

794

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jonathan J. Kinkel*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Travis Dewitt appeals judgments of conviction, entered following his plea, finding him guilty of seven counts in four cases. He also appeals orders denying his motions to withdraw his pleas. Dewitt argues that his plea agreement was void as a matter of law because nine bail jumping charges were "legally unsupportable" and, consequently, the agreement was illusory. We reject Dewitt's arguments and affirm the judgments and orders.

## Background

¶ 2. Dewitt was initially charged in three Taylor County cases. In case No. 2005CM41, Dewitt was charged with battery of Kayla Langiewicz and disorderly conduct. In case No. 2005CF59, he was charged with operating a motor vehicle without the owner's consent, disorderly conduct, and criminal damage to property. In case No. 2005CF68, Dewitt was charged with second-degree recklessly endangering safety and

796

disorderly conduct. All seven counts were charged with the habitual offender penalty enhancer. Dewitt pled not guilty to all the charges.

¶ 3. On January 25, 2006, the court held a joint bond hearing for all three cases. The court imposed a $500 signature bond in the misdemeanor case and $500 cash bonds in each of the two felony cases. The court ordered conditions as requested by the State. In case Nos. 2005CM41 and 2005CF59, these conditions included an order that Dewitt have no contact with Langiewicz. Dewitt signed the signature bond, but could not post the cash bonds until February 13, 2006.

¶ 4. Dewitt allegedly called Langiewicz nine times between January 30 and February 9, 2006. As a result, the State filed Taylor County case No. 2006CM43, alleging nine counts of bail jumping for violating the no contact provision in the prior misdemeanor case.[1]

¶ 5. In July 2006, Dewitt entered a plea agreement covering all four cases. He pled guilty to misdemeanor battery; disorderly conduct and misdemeanor criminal damage to property, both as a habitual offender; second-degree recklessly endangering safety; and three counts of bail jumping. Of the remaining charges, some were dismissed and read in, while others were dismissed outright.

¶ 6. The court conducted an appropriate plea colloquy, accepted the plea, and found Dewitt guilty before

---

[1] WISCONSIN STAT. § 946.49(1) provides, in relevant part:

Whoever, *having been released from custody under ch. 969,* intentionally fails to comply with the terms of his or her bond is:

(a) If the offense with which the person is charged is a misdemeanor, guilty of a Class A misdemeanor. (Emphasis added.)

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

sentencing him to three years' initial confinement and four years' extended supervision for the endangering safety charge. Shorter, concurrent sentences were imposed for the other offenses.

¶ 7. Dewitt then filed nearly identical postconviction motions seeking to withdraw his guilty pleas. He argued the bail jumping convictions were invalid because he was still a prisoner in jail when he violated the no contact order. The State responded Dewitt had technically been released on the signature bond for the first misdemeanor case. The court observed that the validity of the bail jumping charges was "not an area of settled law" but rejected the motions. It determined that the charges were at least arguably valid and Dewitt therefore received the benefit of the bargain of his plea agreement because he avoided the possibility that all nine charges would be valid and yield nine convictions.

## Discussion

¶ 8. Dewitt raises the same argument on appeal. He contends that because he could not post the cash bonds, he was not physically released on his signature bond. Thus, because he was still in custody, he could not be charged with bail jumping under Wis. Stat. § 946.49.

¶ 9. To withdraw his pleas after sentencing, Dewitt must establish, by clear and convincing evidence, that failure to permit his plea withdrawal will result in a manifest injustice. *State v. Trochinski*, 2002 WI 56, ¶ 15, 253 Wis. 2d 38, 644 N.W.2d 891. Plea withdrawal is necessary to correct a manifest injustice if a plea is not knowingly, intelligently, or voluntarily entered. *Id.* Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact. *Id.*, ¶ 16.

¶ 10. Here, there is no argument that the plea colloquy was inadequate or infirm. Thus, we could say Dewitt has waived the issue entirely. A valid guilty plea waives all nonjurisdictional defects and defenses. *State v. Aniton*, 183 Wis. 2d 125, 129, 515 N.W.2d 302 (Ct. App. 1994). At the time he entered his plea, Dewitt was aware of the elements of bail jumping, the facts giving rise to the State's charges, and his potential defense that he was not released. Further, he acknowledged the rights he was giving up by entering his pleas. In short, the plea colloquy fulfilled all the legal requirements.[2]

¶ 11. But waiver is simply an administrative rule. *State v. Riekkoff*, 112 Wis. 2d 119, 124, 332 N.W.2d 744 (1983). Dewitt does not prevail on the merits, either, because there is no manifest injustice justifying plea withdrawal.

¶ 12. WISCONSIN STAT. § 969.02 provides, in part,

(1) A judge may release a defendant charged with a misdemeanor without bail or may permit the defendant to execute an unsecured appearance bond in an amount specified by the judge.

(2) In lieu of release pursuant to sub. (1), the judge may require the execution of an appearance bond with sufficient solvent sureties, or the deposit of cash in lieu of sureties . . . .

---

[2] While Dewitt does not directly argue his plea was unknowing or involuntary, he contends that the fact that it was illusory begs the question of whether the plea was valid in the first place. Applying waiver here does not beg the question. Bail jumping is not an offense foreign to the law, and therefore the validity of the bail jumping charges was something that should have been considered and weighed before entering the pleas.

In turn, as indicated above, Wis. Stat. § 946.49 provides that someone who "having been released from custody under [Wis. Stat.] ch. 969, intentionally fails to comply with the terms of his or her bond is" guilty of a crime. Dewitt asserts that "release" must mean physical release from custodial confinement, specifically, "the act of liberating or freeing: discharge from restraint."

¶ 13. Statutory interpretation is a question of law. *State v. Stenklyft*, 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769. We begin with the statute's text, giving it the common, ordinary, and accepted meaning. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 14. It is true that Wis. Stat. §§ 946.49 and 969.02 do not explicitly define "release," and perhaps it is fair to say that the common meaning of the word contemplates physical release from custody. However, we interpret statutory language in context, "not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶ 46. There is one important clue that physical release is not the sole meaning of release in the bond context. The court is permitted to impose "a condition that the defendant return to custody after specified hours." Wis. Stat. § 969.02(3)(d). Because it would be absurd to conclude that conditions of release would then apply when the defendant was outside the jail, but be "turned off" upon return to custody, it is evident that "release" refers to the defendant posting the bond, be it signature or cash, and need not be accompanied by the defendant's physical departure from the jailhouse.

¶ 15. Dewitt nevertheless asserts that "a no-contact bail condition does not govern or restrict a defendant's activities while he or she is still a prisoner." But the case to which Dewitt cites, *State v. Orlik*, 226 Wis. 2d 527, 595 N.W.2d 468 (Ct. App. 1999), is inapplicable. Orlik was ordered held on a $320,000 cash bond and told, as a condition of release, not to contact his victims, including his wife and daughter. *Id.* at 530. The jail had a policy that if a no contact order was a condition of release, those individuals named in the order were not permitted to visit the defendant in jail. *Id.* at 531. The wife and daughter wanted to visit Orlik, so he brought a motion seeking clarification from the court that the order did not apply while he was incarcerated. *Id.* at 530–31.

¶ 16. The trial court denied the motion, concluding the statutes authorized it to impose a no contact provision whether the defendant was released from jail or not. *Id.* at 532. We reversed, concluding that WIS. STAT. § 969.03[3] permitted the court to impose "conditions that govern the release of the defendant from custody . . . but the statute does not suggest that the court has authority to enter orders governing the defendant's conduct if he is not released because he cannot post bail." *Orlik*, 226 Wis. 2d at 538.

¶ 17. But Orlik was imprisoned on charges in a single case for which he could not post bond, and the case is therefore distinguishable on its facts. Here, Dewitt had three bonds. He was able to make bond on the misdemeanor simply by signing it, and he therefore committed himself to its conditions.[4] Dewitt was not obligated to

---

[3] WISCONSIN STAT. § 969.03 is the section on bond for defendants charged with felonies.

[4] Indeed, bond is "an undertaking either secured or unsecured entered into by a person in custody by which the person

sign the bond, especially if he knew he would not be posting cash bond. Thus, while not physically released, Dewitt was released as contemplated by WIS. STAT. § 969.02 when he fulfilled the signature bond.[5]

¶ 18. As to his complaint that his plea agreement was illusory, this argument is premised on the notion that the bail jumping charges are invalid. They are not. In any event, Dewitt did receive the benefit of the bargain, as the circuit court found. Rather than disputing and risking loss on nine bail jumping charges, he acquiesced to three, cutting his exposure to penalties by two-thirds.

*By the Court.*—Judgments and orders affirmed.

binds himself or herself to comply with such conditions as are set forth therein." WIS. STAT. § 967.02(4).

[5] The State points out that it did not and could not charge Dewitt with bail jumping in case No. 2005CF59 because he did not post bond for that case.