COURT OF APPEALS
DECISION
DATED AND FILED

June 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP983-CR**

Cir. Ct. No. 2021CF482

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DYLAN R. HILDEBRANDT,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Wood County: TODD P. WOLF, Judge. *Affirmed.*

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dylan Hildebrandt appeals a judgment of conviction and an order denying his postconviction motion in Wood County. A

jury found Hildebrandt guilty of several crimes, including felony bail jumping based on an alleged violation of a bond condition in a separate criminal case pending in Marathon County.

¶2 On appeal, Hildebrandt argues that a police officer's reference during trial to the fact that Hildebrandt refused to talk to police after his arrest violated his constitutional rights under the Fifth Amendment. On this issue, we conclude that Hildebrandt's Fifth Amendment rights were not violated because, viewed in context, the officer's testimony was not manifestly intended to be a comment on Hildebrandt's exercise of his right to remain silent, nor would the jury naturally and necessarily take it as such. *See* ***State v. Nielsen***, 2001 WI App 192, 247 Wis. 2d 466, 634 N.W.2d 325.

¶3 Hildebrandt separately argues that he could not be convicted of bail jumping in this case because, in the Marathon County case, the circuit court had forfeited his bail and issued a warrant for his arrest before he committed the offenses giving rise to the felony bail-jumping charge in this case. As to this issue, we conclude that, because at the time of the offenses in this case, Hildebrandt was still in the status of having been "released from custody" on bond in the Marathon County case, he could be charged with felony bail jumping in this case under WIS. STAT. § 946.49(1)(b) (2023-24).[1]

¶4 Accordingly, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

**BACKGROUND**

¶5 Hildebrandt was charged in this case with first-degree recklessly endangering safety, possession of methamphetamine, felony bail jumping, two counts of criminal damage to property, resisting or obstructing an officer, and carrying a concealed knife.

¶6 The criminal complaint alleged the following. Police attempted to stop a vehicle that Hildebrandt was driving, based on a report that the driver had recently been "passed out" in the vehicle. Hildebrandt then led police on an extended high-speed vehicle chase, which ended when Hildebrandt drove the vehicle through a closed gate and crashed into a tree, injuring a passenger in the vehicle. Hildebrandt then fled on foot and did not obey police orders to stop before being apprehended. Hildebrandt refused to identify himself to police. Inside the vehicle, police found a knife and a small glass vial containing a crystalline substance that tested positive for methamphetamine. We will sometimes refer to this alleged course of conduct as "the charged conduct in this case."

¶7 The charged conduct in this case occurred after Hildebrandt had been released from custody on a signature bond in a separate, pending criminal case in Marathon County. One condition of the bond entered in the Marathon County case was that Hildebrandt commit no crimes.

¶8 During a two-day jury trial in this case, the prosecution presented testimony from Hildebrandt's girlfriend, who was the passenger in the vehicle; the owner of the vehicle; the owner of the residence where the crash occurred; and six police officers. Relevant here, Deputy Mitchel Jazdzewski of the Wood County Sheriff's Department testified that he reached the area of the pursuit just before the

vehicle crashed into the tree, saw "a male subject" run out of the woods, pursued the individual on foot, and followed him over a ten-foot-high fence, before the individual lay down on the ground and was apprehended. After Jazdzewski gave this testimony, the prosecutor asked him, "Were you able to identify the person who you were chasing that afternoon?" Jazdzewski responded, "I wasn't able to actually identify him because he refused to talk with myself or anyone afterwards." Hildebrandt moved for a mistrial, arguing that Jazdzewski's response violated his Fifth Amendment right to remain silent. The circuit court denied Hildebrandt's motion.

¶9 During the trial, Hildebrandt also moved to dismiss the bail-jumping charge. Hildebrandt argued that the day before the charged conduct in this case, he had failed to appear in the circuit court on the Marathon County case, which resulted in the court forfeiting his bail in that case and issuing a warrant for his arrest. As a result, Hildebrandt argued, he was no longer in the status of being "released from custody" on bond in the Marathon County case for purposes of the bail-jumping charge in this case, which was brought under WIS. STAT. § 946.49. The circuit court in this case denied Hildebrandt's motion to dismiss the bail-jumping charge.

¶10 Hildebrandt was found guilty and convicted on all charges. He moved for postconviction relief, requesting a new trial based on his Fifth Amendment claim, and again arguing that his bail-jumping charge should have been dismissed. The circuit court denied Hildebrandt's motion.

¶11 Hildebrandt appeals.

## DISCUSSION

¶12     Hildebrandt argues that Jazdzewski's testimony that Hildebrandt refused to talk to police violated his rights under the Fifth Amendment. Hildebrandt also argues that, because at the time of the charged conduct in this case, his "bond [had been] forfeited and replaced by a bench warrant" in the Marathon County case, he was not "released from custody" on bond in the Marathon County case for purposes of the bail-jumping statute, WIS. STAT. § 946.49. As a result, Hildebrandt argues, he could not be convicted in this case of bail jumping for violating the terms of his bond in the Marathon County case.[2]

### I. Fifth Amendment Right to Remain Silent

¶13     As indicated, Jazdzewski, when asked if he was able to identify the person he had chased, testified, "I wasn't able to actually identify him because he refused to talk with myself or anyone afterwards." Hildebrandt moved for a mistrial based on Jazdzewski's response, and the circuit court denied the motion. The court reasoned that the response "clearly related only to identification … and that was the context of [Jazdzewski] saying that [Hildebrandt] exercised his right not to identify himself or say who he was." Hildebrandt renewed this argument in

---

[2] The parties often appear to use "bond" and "bail" interchangeably, but these terms have distinct meanings. "'Bond' means an undertaking either secured or unsecured entered into by a person in custody by which the person binds himself or herself to comply with such conditions as are set forth therein." WIS. STAT. § 967.02(1h); *see also* **State v. Jacobs**, 2023 WI App 53, ¶7 n.4, 409 Wis. 2d 467, 997 N.W.2d 130 (using § 967.02(1h)'s definition of "bond" when interpreting WIS. STAT. § 946.49(1)); **State v. Dawson**, 195 Wis. 2d 161, 168, 536 N.W.2d 119 (Ct. App. 1995) (same). In contrast, "bail" is defined as "monetary conditions of release." WIS. STAT. § 969.001(1); *see also* § 967.02(1d). Accordingly, we refer to forfeiture of "bail" in the Marathon County case, unless we are quoting the parties or court. *See also* WIS. STAT. § 969.13(1) ("If the conditions of [a defendant's] bond are not complied with, [a circuit] court ... shall enter an order declaring the bail to be forfeited.").

a postconviction motion for a new trial, and the court denied his motion. Hildebrandt argues that the court erred when it denied his motion for a mistrial and his postconviction motion.

¶14    "We review a circuit court's decision to grant or deny a motion for mistrial for an erroneous exercise of discretion," which "'may arise from an error in law or from the failure of the circuit court to base its decisions on the facts in the record.'" *State v. Debrow*, 2023 WI 54, ¶15, 408 Wis. 2d 178, 992 N.W.2d 114 (quoting *State v. Ford*, 2007 WI 138, ¶28, 306 Wis. 2d 1, 742 N.W.2d 61). We review de novo the application of constitutional principles to undisputed facts. *Nielsen*, 247 Wis. 2d 466, ¶32.

¶15    "The privilege against self-incrimination is guaranteed by art. I, § 8, of the Wisconsin Constitution and by the Fifth Amendment to the United States Constitution."[3]  *Id.*, ¶30.  It is "improper for the State to comment upon a defendant's choice to remain silent at or before trial." *Id.*  In determining that Hildebrandt's Fifth Amendment rights were not violated, the circuit court relied on the test set forth in *Nielsen*:

> The test for determining if there has been an impermissible comment on a defendant's right to remain silent is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent.  The court must look at the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact on the jury.

---

[3] The State does not dispute Hildebrandt's assertion that, at the time of his refusal to speak with police, he was under arrest, nor does the State dispute that his Fifth Amendment rights had attached.

*Id.*, ¶32 (citation omitted).

¶16    Applying this test, we conclude that Jazdzewski's testimony, viewed in context, was not "manifestly intended" to be a comment on Hildebrandt's exercise of his right to remain silent. *See United States v. Mora*, 845 F.2d 233, 235 (10th Cir. 1988) (explaining that manifest intent will not be found if some other explanation for the remark is equally plausible); *see also Nielsen*, 247 Wis. 2d 466, ¶32 (citing *Mora*).  We also conclude that the jury would not have "naturally and necessarily" taken it as such.

¶17    As summarized above, the prosecutor elicited the testimony at issue from Jazdzewski after Jazdzewski had just described his pursuit of the individual near the crash site, and the clear intent of the prosecutor's question—"Were you able to identify the person who you were chasing that afternoon?"—was simply to determine whether Jazdzewski learned the name of the individual he chased.  This appeared to be part of an attempt by the prosecution to prove the identity element of its case.  Jazdzewski's response to this question—"I wasn't able to actually identify him because he refused to talk with myself or anyone afterwards"—was intended only to explain *why* Jazdzewski did not initially learn Hildebrandt's name after apprehending him.  The prosecutor's questions following Jazdzewski's response all related in some way to the identity of the individual Jazdzewski chased, and the line of questioning culminated in Jazdzewski's testimony that he learned that Hildebrandt was that individual based on events that followed.[4]  We

---

[4]  After Jazdzewski's response, the following exchange occurred:

> Q. Deputy Jazdzewski, were you informed [of] the identity of the person who you were chasing that afternoon?

(continued)

further note that, in arguing its case to the jury, the prosecution did not rely on Jazdzewski's testimony regarding Hildebrandt's exercise of his right to remain silent.

¶18 Viewed in context, Jazdzewski's testimony was not manifestly intended to be a comment on Hildebrandt's silence. *See* ***State v. Cooper***, 2003 WI App 227, ¶19, 267 Wis. 2d 886, 672 N.W.2d 118 (explaining that a police officer's statement that the defendant "chose not to come in and talk to me" was not manifestly intended to imply that the defendant was invoking the defendant's right to remain silent, but rather "to explain why [an] investigation had gone no further"). We also conclude that the jury would not have naturally and necessarily taken Jazdzewski's testimony as such. Thus, we conclude that, under the ***Nielsen*** test, Jazdzewski's testimony was not an impermissible comment on Hildebrandt's right to remain silent. We now explain why we reject Hildebrandt's arguments to the contrary.

---

A. Later on after he was detained and placed in my custody, I was informed by other officers that were involved with the pursuit and were out where the crash had occurred … of the identity of the male subject.

Q. And what were you informed was the identity of the male individual?

A. I was informed the male individual's name was a Dylan Hildebrandt.

Q. And do you see in court this afternoon the individual who you chased … that afternoon?

A. Yes.

Jazdzewski then identified Hildebrandt as the individual he had chased.

¶19    Hildebrandt argues that we should "decline to follow" *Nielsen* because *Nielsen*'s "analysis of federal law is inconsistent with controlling federal precedent." However, we are bound by *Nielsen*. *See Wisconsin Voter All. v. Secord*, 2025 WI 2, ¶32, 414 Wis. 2d 348, 15 N.W.3d 872 ("Officially published opinions of the court of appeals are precedential and have statewide effect. Therefore, only the supreme court may overrule, modify, or withdraw language from a published court of appeals opinion." (citations omitted)).

¶20    Hildebrandt also appears to argue that the *Nielsen* test applies only when the comment concerning the defendant's silence is used to impeach a defendant. This argument fails because it is unsupported by *Mora*, the federal authority that we relied on in *Nielsen* when we adopted the relevant test. *Mora* contains no language to support Hildebrandt's argument that the test applies only when the relevant argument or testimony regarding the defendant's silence is used to impeach a defendant. Indeed, in *Mora*, the test was applied to the prosecutor's comments in closing argument regarding the defendant remaining silent, comments that were made to bolster the credibility of the prosecution's witnesses following the defense's attack on the credibility of those witnesses. *See Mora*, 845 F.2d at 235-36.

¶21    Further, in articulating the test that was subsequently adopted in *Nielsen*, the *Mora* court relied on case law that also applied the test outside of the context of impeaching a defendant's testimony. *See Mora*, 845 F.2d at 235. For example, the *Mora* court quoted *United States v. Morales-Quinones*, 812 F.2d 604, 613 (10th Cir. 1987). *Mora*, 845 F.2d at 235. In *Morales-Quinones*, the court applied the test to conclude that testimony that the defendant refused to sign

the waiver on the back of a "*Miranda* form" after having been read his *Miranda* rights—testimony that was not used to impeach the defendant—was permissible.[5] *See Morales-Quinones*, 812 F.2d at 613. The *Mora* court also relied on *United States v. Sigal*, 572 F.2d 1320 (9th Cir. 1978). *See Mora*, 845 F.2d at 235-36. In *Sigal*, the court applied the test to two separate comments regarding the defendant's silence, one of which was deemed permissible because "it was made as part of the prosecutor's effort to bolster the credibility of the key prosecution witness." *Sigal*, 572 F.2d at 1322. We further note that Hildebrandt offers no persuasive justification for why the test articulated in *Nielsen* should be confined to instances in which the defendant's silence is used to impeach the defendant.

¶22 Hildebrandt also analogizes this case to *Reichhoff v. State*, 76 Wis. 2d 375, 251 N.W.2d 470 (1977), and *State v. Krancki*, 2014 WI App 80, 355 Wis. 2d 503, 851 N.W.2d 824, two cases in which there was a Fifth Amendment violation. Those cases are easily distinguished. In *Reichhoff*, the prosecutor asked two police officers at trial a total of five questions "relating to [the] defendant's silence, his failure to profess his innocence[,] or his failure to deny his guilt at the time of arrest." *Reichhoff*, 76 Wis. 2d at 377. The prosecutor also, "in closing argument, twice attacked the defendant's credibility, commenting on [the] defendant's failure to profess his innocence." *Id.* We concluded, "The questions were manifestly designed to demonstrate a tacit admission of guilt on the part of the defendant. The purpose of the evidence was to allow the jury to draw an inference of [the] defendant's guilt from the defendant's silence." *Id.* at 378. *Reichhoff* is not analogous to this case: here, the relevant testimony occurred

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

when the prosecution was attempting to establish the name of the individual Jazdzewski had chased; the testimony did not relate to Hildebrandt's failure to profess his innocence; in addition, Jazdzewski's testimony was a single, isolated piece of testimony; and the prosecution did not rely on this testimony in arguing its case.

¶23    In *Krancki*, the defendant argued, after he was convicted of operating a motor vehicle while intoxicated, that his trial counsel was constitutionally ineffective "for permitting references to his pretrial silence as to there being another driver." *Krancki*, 355 Wis. 2d 503, ¶1.  There,

> [t]oward the end of testimony by the arresting officer, the court permitted jurors to submit questions to the officer. Without objection, the court permitted the jury question: "Did [Krancki] indicate he had not been driving?"  In response to this question, the officer answered, "He never made that statement, no."  The State followed up during rebuttal testimony by asking the officer, "When you made contact with the defendant and when you're on the scene administering field sobriety tests, did he ever tell you he was not the driver?"  The officer responded, "He never stated he was the driver.  He did not state someone else was driving the vehicle."  The officer testified that he did not ask Krancki whether he was with someone else.

*Id.*, ¶14 (second alteration in original).  The prosecution then argued in closing:

> [The defendant] didn't need to have said that he wasn't the driver, but don't you think that's something you can take into consideration?  That as he is talking to the officer, as the officer is asking him about his drinking [and administering sobriety tests], at some point the defendant would have said, "Wait a minute.  You got the wrong guy. There was someone else driving that car."  He didn't do that.

*Id.*  In *Krancki* we assumed without deciding that trial counsel performed deficiently by failing to object to these references to the defendant's silence, and we concluded that the defendant had not shown prejudice.  *Id.*, ¶18.  In light of

11

this assumption, we did not address whether a Fifth Amendment violation had occurred; therefore, Hildebrandt's reliance on *Krancki* is misplaced. Moreover, *Krancki* is distinguishable because, as with *Reichhoff*, the references to the defendant's silence were extensive and included argument made by the prosecutor, and there was no other equally plausible explanation for the remarks in *Krancki* other than to allow the jury to draw an inference of guilt.

¶24    In sum, we conclude that Jazdzewski's testimony that Hildebrandt refused to talk to police did not warrant a mistrial because it was not manifestly intended to be a comment on Hildebrandt's silence and the jury would not naturally and necessarily take it as such. Instead, Jazdzewski's testimony was intended to explain why Jazdzewski did not initially learn Hildebrandt's name after Hildebrandt was arrested. Accordingly, the circuit court did not err in denying Hildebrandt's motion for a mistrial or postconviction motion based on this testimony.[6]

## II.  *Bail-Jumping Conviction*

¶25    The parties dispute the interpretation of the bail-jumping statute, WIS. STAT. § 946.49(1). The interpretation of § 946.49(1) "presents a question of law that we review de novo." *State v. Jacobs*, 2023 WI App 53, ¶14, 409 Wis. 2d 467, 997 N.W.2d 130. "[S]tatutory interpretation 'begins with the language of the

---

[6] Hildebrandt also argues that the circuit court erroneously exercised its discretion when it "overrul[ed Hildebrandt's] objection" to Jazdzewski's testimony and when it failed to issue a curative instruction regarding Jazdzewski's testimony. We reject these arguments. Hildebrandt does not identify on appeal, nor do we discern in the record, any objection by Hildebrandt to Jazdzewski's testimony apart from his motion for a mistrial, and Hildebrandt never asked the court to issue a curative instruction. Further, because we conclude that Jazdzewski's testimony did not violate Hildebrandt's Fifth Amendment rights, the court did not erroneously exercise its discretion and no curative instruction was required.

statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

¶26 In March 2021, Hildebrandt was released from custody on a $1,000 signature bond in the Marathon County case. Relevant here, the bond agreement's requirements include, "Defendant shall appear on all court dates," and "Defendant shall not commit any crime." The day before the charged conduct in this case, Hildebrandt failed to appear for a hearing in the Marathon County case. At that hearing, the circuit court ordered that Hildebrandt's "bond be forfeited" and authorized the issuance of a bench warrant for his arrest.

¶27 The next day, Hildebrandt was arrested for the conduct charged in this case, and he was charged with, among other crimes, felony bail jumping in violation of WIS. STAT. § 946.49(1)(b). This subpart states: "Whoever, having been released from custody under [WIS. STAT.] ch. 969, intentionally fails to comply with the terms of his or her bond is," "[i]f the offense with which the person is charged is a felony, guilty of a Class H felony." The three elements for felony bail jumping are: (1) the defendant was charged with a felony; (2) the defendant was released from custody on bond; and (3) the defendant intentionally failed to comply with the terms of the bond. *Jacobs*, 409 Wis. 2d 467, ¶18 (citing WIS JI—CRIMINAL 1795 (2018)). Only the second element is at issue here.

¶28 At trial, Hildebrandt moved to dismiss the felony bail-jumping charge in this case, arguing that he was not released from custody on bond for purposes of the bail-jumping statute because his bail in the Marathon County case

13

was forfeited and replaced by a bench warrant as a result of his failure to appear in the Marathon County case. The circuit court denied Hildebrandt's motion, concluding that Hildebrandt had not established that "his bond [was] no longer in existence" at the time of the charged conduct in this case. Hildebrandt renewed his arguments in a postconviction motion, which the court denied.

¶29 Hildebrandt renews on appeal his argument that he could not be convicted of felony bail jumping for violating the terms of his bond. Specifically, he argues that, because in the Marathon County case his "bond was forfeited and replaced by a bench warrant, [he] was no longer released from custody on bond" under the bail-jumping statute at the time of the charged conduct in this case, and thus could not be convicted of that charge. In response, the State argues that the two-part test that we announced in *Jacobs* controls, and that under that test, Hildebrandt continued to be released from custody on bond because he had not yet been taken into custody on the Marathon County case at the time of the charged conduct in this case. We agree with the State.

¶30 We begin by discussing our opinion in *Jacobs*. There, the defendant Jacobs was charged with felonies in Forest and Outagamie Counties and released on bond in both cases. *Jacobs*, 409 Wis. 2d 467, ¶7. In each case, Jacobs then failed to appear for a hearing. *Id.*, ¶8. "[T]he Forest County circuit court issued a bench warrant and ordered Jacobs' bond including bail forfeited," and the Outagamie County circuit court issued a bench warrant that stated that Jacobs "'shall be held for an appearance in court.'" *Id.* Jacobs was arrested on these bench warrants. *Id.* Then, while in custody, he allegedly obstructed an officer, and he was charged with two counts of felony bail jumping, which "were based on the allegation that, by committing a new crime, Jacobs violated the conditions of his bonds in the Forest and Outagamie County cases." *Id.*, ¶¶8, 9. On appeal,

Jacobs argued that, after he was arrested pursuant to the Forest County and Outagamie County bench warrants, he was no longer "released from custody" on the bonds from those counties and that WIS. STAT. § 946.49 therefore did not apply. *Id.*, ¶¶4, 25. We concluded that Jacobs was correct and we rejected the State's arguments to the contrary. *Id.*, ¶¶6, 35.

¶31 The *Jacobs* court analyzed the meaning of WIS. STAT. § 946.49(1), which, as stated, provides that "[w]hoever, having been released from custody under [WIS. STAT.] ch. 969, intentionally fails to comply with the terms of his or her bond" is guilty of a Class H felony, if the offense with which the person charged is a felony. Our focus in *Jacobs*, as it is here, was on the meaning of the phrase "having been released from custody" in § 946.49(1). *Jacobs*, 409 Wis. 2d 467, ¶21. Consistent with federal case law, we interpreted the phrase "having been released" as requiring that the defendant be released from custody in the underlying criminal case at the time that the defendant committed the alleged offense that forms the basis of the felony bail-jumping charge. *Id.*, ¶¶24, 25, 31. Further, we concluded that the language "having been" in § 946.49 does not mean that "a defendant was released *at any point in time* during a criminal case"; rather, "§ 946.49, in some circumstances, has a stopping point other than the end of a criminal case's proceedings." *Id.*, ¶22. Thus, based on the facts and arguments in *Jacobs*, "our task [was] to determine at what point a defendant stops being subject to WIS. STAT. § 946.49 in a criminal proceeding if his or her release status under WIS. STAT. ch. 696 has changed." *Id.*, ¶25.

¶32 We concluded that a "defendant cannot be liable under WIS. STAT. § 946.49 for acts occurring after he or she was initially 'released from custody under [WIS. STAT.] ch. 969' but was then placed in custody in connection with the same case in which he or she had previously been released." *Id.*, ¶31. We then set

forth a two-part test "to determine when—after being released from custody under WIS. STAT. ch. 969—a defendant no longer meets the definition of 'having been released.'" *Id.*, ¶3. We articulated this test as follows:

> [A] defendant does *not* meet the definition of "having been released from custody under [WIS. STAT.] ch. 969" when (1) the defendant is arrested in connection with the case in which he or she was previously released pursuant to ch. 969, and (2) there is court action on the bond under which the defendant was released that leads to the defendant's custody.

*Id.*, ¶31; *see also id.*, ¶34 ("[A]fter being released from custody under WIS. STAT. ch. 969[,] a defendant does *not* continue to meet the definition of 'having been released from custody under ch. 969' after: (1) the defendant is arrested in connection with the case in which he or she was previously released from custody pursuant to ch. 969; and (2) there is court action regarding the bond pursuant to which the defendant was previously released."); *id.*, ¶3 ("[W]e adopt[] a two-step test to determine when—after being released from custody under WIS. STAT. ch. 969—a defendant no longer meets the definition of 'having been released.' First, the defendant must be placed in physical custody on the bond at issue. Second, there must be some court action regarding the bond under which the defendant was previously released."). As to the first part of this test, we observed that, "[p]rior to a defendant's custody pursuant to the bond's change, he or she still benefits from the original agreement with the court and therefore remains 'released.'" *Id.*, ¶30. Regarding the second part of the test—*i.e.*, what constitutes sufficient "court action" regarding the bond—we noted that such court action "includes the issuance of a bench warrant, the revocation of bond, or the modification of bond such that a defendant cannot obtain release." *Id.*, ¶5.

¶33    Applying the test from *Jacobs* here, we conclude that Hildebrandt continued to meet the definition of "having been released" at the time of the offenses here and that Hildebrandt could therefore be convicted of bail jumping. Specifically, we conclude that the first part of the *Jacobs* test was not satisfied: as Hildebrandt himself concedes, at the time he committed the charged conduct in this case, he was not in custody on the Marathon County case.[7]  *Id.*, ¶¶3, 31.  Thus, Hildebrandt does not dispute that the *Jacobs* test was not satisfied.  Instead, he argues that the test from *Jacobs* does not apply here.  We conclude that the test applies on these facts.

¶34    Hildebrandt relies on the fact that in *Jacobs*, we stated in a footnote that we did not need to address "whether the forfeiture of Jacobs' … bail … was, alone, sufficient to shield Jacobs from liability under WIS. STAT. § 946.49 because Jacobs does not raise such an argument on appeal" and because, in any event, "we reverse … on narrower grounds."  *Id.*, ¶34 n.13.  Hildebrandt interprets footnote 13 in *Jacobs* as "expressly reserv[ing]" the issue of whether forfeiture of bail shields a defendant from liability under § 946.49 "for later consideration." However, there we stated only that we were not addressing whether the defendant *in that case, specifically*, could not be convicted of bail jumping based on the forfeiture of his bail.  We did not state that the test from *Jacobs* did not apply in cases in which bail had been forfeited but the defendant was not in custody at the time of the conduct at issue.  *Id.*  Instead, we set forth, in unambiguous terms, the test that we have just summarized. *See id.*, ¶3.  That test squarely resolves the

---

[7] As the *Jacobs* court makes clear by its use of the conjunctive "and" in articulating the two-part test, and by the court's overall reasoning, both parts of the test must be satisfied in order for a defendant to be shielded from a potential bail-jumping conviction.  Because we conclude that the first part of the test is not met here, we do not address the second part.

issue presented here, and we see no basis to carve out an exception to the test announced in *Jacobs* based on footnote 13.

¶35     In further support of his argument that *Jacobs* does not apply here, Hildebrandt relies on the fact that in *Jacobs* the test that we adopted was one that "the parties propose[d]." *Id.*; *see also id.*, ¶25 ("Both parties agree that custody is necessary.  That is, for [WIS. STAT.] § 946.49 not to apply, a defendant must be arrested in connection with the case in which he or she was previously released from custody under [WIS. STAT.] ch. 969.").  Hildebrandt characterizes the custody requirement from *Jacobs* as "a *concession* made by the parties." However, Hildebrandt fails to explain how the parties' agreement in that appeal alters the fact that this court announced a broadly applicable test for determining when a defendant no longer meets the condition of having been released for purposes of the bail-jumping statute.  *See id.*, ¶3.  For example, we did not state that we merely assumed without deciding that the test proposed by the parties applied to resolve the appeal.

¶36     Hildebrandt also argues that we should not apply the *Jacobs* test because the custody requirement in the test is inconsistent with principles of contract law.  However, we need not address this argument because, even assuming that Hildebrandt were correct, we are bound by the test articulated in *Jacobs*.  *See Secord*, 414 Wis. 2d 348, ¶32.

¶37     Moreover, even setting aside that we are bound by *Jacobs*, Hildebrandt's argument under general principles of contract law is unpersuasive. Relevant here, in *Jacobs* we described bond as "essentially a contract between a defendant and a circuit court that 'binds' the defendant 'to comply with such

18

conditions as are set forth' in the agreement." ***Jacobs***, 409 Wis. 2d 467, ¶30. We went on to say:

> Once the bond agreement is changed or broken—either by the court or by the defendant—and the defendant is put in custody on that specific case, the agreement is no longer enforceable. Prior to a defendant's custody pursuant to the bond's change, he or she still benefits from the original agreement with the court and therefore remains "released."

***Id.***

¶38 Hildebrandt argues that "[i]f a party breaches a material term of a contract, then the contract becomes unenforceable *regardless* of whether a party continues to benefit from the contract." However, as Hildebrandt acknowledges, this argument does not square with what we stated in ***Jacobs***: that a defendant remains "released" under the bail-jumping statute as long as the defendant continues to benefit from the original bond agreement by not being in custody. Additionally, Hildebrandt cites no authority to support his argument. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."). Further, as the State argues, and as Hildebrandt concedes in his reply brief, a material breach releases only the nonbreaching party (here, the circuit court) from performance. ***Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.***, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996); *see also **Jacobs***, 409 Wis. 2d 467, ¶30 ("[B]ond is essentially a contract between a defendant and a circuit court ...."). Accordingly, Hildebrandt's argument based on the application of general contract principles fails.

¶39 Hildebrandt also relies on our opinion in ***State v. Dewitt***, 2008 WI App 134, 313 Wis. 2d 794, 758 N.W.2d 201. In ***Dewitt***, we addressed whether a

defendant who had signed a signature bond in a misdemeanor case but remained in custody because he was unable to post bail in two felony cases was "released from custody" for purposes of WIS. STAT. § 946.49. *Dewitt*, 313 Wis. 2d 794, ¶¶3, 8. We concluded, based on the fact that a court may require a defendant who has been released on bond to return to custody after specified hours, "that 'release' refers to the defendant posting the bond, be it signature or cash, and need not be accompanied by the defendant's physical departure from the jailhouse." *Id.*, ¶14. Relying on this conclusion, Hildebrandt argues that "[c]ustody is not [a] veritable shield from liability." However, in *Dewitt* we were addressing at what point a defendant first begins to meet the definition of "having been released;" in contrast, as noted, the test in *Jacobs* addresses "when—after being released from custody under [WIS. STAT.] ch. 969—a defendant no longer meets the definition of 'having been released.'" *Jacobs*, 409 Wis. 2d 467, ¶3. Further, we adopted the test in *Jacobs* only after explicitly considering *Dewitt*. *Id.*, ¶¶27-29 ("When [another case] and *Dewitt* are read together, it is clear that in order for a defendant to be charged with bail jumping under WIS. STAT. § 946.49, the alleged acts must have occurred while he or she was released from custody (meaning he or she signed the necessary forms and/or posted the necessary bail, but it does not necessarily mean a physical release from jail) under WIS. STAT. ch. 969 on the case in which he or she was charged."). Our conclusion here—that Hildebrandt was still "released" for purposes of the bail-jumping statute because he was not in custody in connection with the Marathon County case—is not inconsistent with *Dewitt*.

¶40 In sum, we reject Hildebrandt's arguments that the test from *Jacobs* does not apply, and applying that test, we conclude that, at the time of the charged conduct in this case, Hildebrandt continued to meet the definition of "having been released from custody" after his bail was forfeited because he was not in custody

20

on the bond in the Marathon County case. Therefore, the circuit court properly denied Hildebrandt's motion to dismiss the bail-jumping charge.[8]

## CONCLUSION

¶41 For the reasons stated above, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Hildebrandt also argues that the test from ***Jacobs***, 409 Wis. 2d 467, ¶3, is inconsistent with certain federal case law. However, assuming without deciding that Hildebrandt's interpretation of the federal cases that he cites is correct, the test from ***Jacobs*** is binding and squarely forecloses Hildebrandt's arguments for our purposes. *See **State v. Mechtel***, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993). Additionally, we note that the outcome we reach here is supported by other federal case law and by state jurisprudence as well. *See, e.g.*, ***Milhem v. United States***, 834 F.2d 118, 121-22 (7th Cir. 1987) (concluding that the issuance of a warrant did not extinguish the defendant's bond and that the federal bail-jumping statute applied); ***United States v. Perry***, 20 F. App'x 97, 105-06 (4th Cir. 2001) (doing the same); ***United States v. Ellis***, 241 F.3d 1096, 1101-03 (9th Cir. 2001) (doing the same when addressing whether a sentence-enhancing statute applied); *see also **People v. Rodrigue***, 187 Cal. App. 3d 828, 829, 833, 232 Cal. Rptr. 187 (Ct. App. 1986) (concluding that the revocation of bail did not result in the defendant not being released for purposes of a sentence-enhancing statute that applied to felonies "committed while that person was released from custody on bail"); ***State v. Harding***, 422 S.E.2d 619, 623-24 (W. Va. 1992) (concluding that the revocation of the defendant's bond did not result in the defendant not being "released upon his personal recognizance" for purposes of West Virginia's bail-jumping statute).